UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| : | |
| AMERICUS DIGIOIA, on behalf of himself : | Civil Action No. |
| and the class of all other similarly situated persons,  : | |
| : | |
| Plaintiff,                          : | **COMPLAINT - CLASS ACTION** |
| : | |
| v.                          : | |
| : | |
| AMERUS LIFE INSURANCE COMPANY,            : | JURY TRIAL DEMANDED |
| a corporation; AMERICAN INVESTORS         : | |
| LIFE INSURANCE COMPANY, INC.,             : | |
| a corporation; AMERUS ANNUITY GROUP       : | |
| CO., a corporation; AMERUS GROUP CO.,     : | |
| : | |
| Defendants.                   : | |
| : | |

Plaintiff Americus Digioia, brings this action on behalf of himself and all others similarly situated, as stated herein to halt the use of unfair and abusive practices by defendants in marketing and selling unsuitable annuity policies to senior citizens, and to remedy the harm caused by such practices to date.  Defendants designed a scheme specifically to exploit and prey upon the finances of vulnerable senior citizens, primarily by the deceptive marketing of estate or financial planning services in order to obtain the seniors' financial information and target them as prospective purchasers of deferred annuities.  Furthermore, defendants' deceptive sales tactics involved the use of standardized misleading marketing materials which failed to disclose the substantial penalties associated with the annuity sold.  Besides this, defendants failed to disclose that the annuities sold by defendants were fundamentally unsuitable for seniors due to their having a maturity date beyond the annuitant's actuarial life expectancy.  Plaintiff specifically alleges that defendants' egregious sales practices: violate the federal Racketeering Influenced Corrupt Organizations Act ("RICO"); violate the unfair competition and deceptive trade practice

laws, and unfair advertising laws in those states where defendants market their annuity products to senior citizens; breach defendants' fiduciary duties to plaintiff; comprise aiding and abetting in breach of defendants' fiduciary duties; bad faith; fraudulent misrepresentation and constitute unjust enrichment such that a constructive trust should be established.

I.       **NATURE OF ACTION**

        1.       This class action seeks to halt the systematically unfair and unlawful sales practices of AmerUs Life Insurance Company and American Investors Life Insurance Company, Inc., and their affiliated entities and remedy the harm caused by their use of a deceptive trust mill and financial planning scheme to solicit, offer and sell single and flexible premium fixed and equity-indexed deferred annuity products ("deferred annuities") to senior citizens (65 years of age or older) with substantial inadequately disclosed "surrender" charges and distribution payment commencement dates, *i.e.*, maturity dates, beyond the annuitant's actuarial life expectancy.   Specifically, agents of the defendants' independent marketing organizations ("IMOs") and their affiliates are carefully trained to approach prospective senior citizens under the guise of providing low-cost estate and/or financial planning services in order to sell them deferred annuities via a variety of misleading sales techniques.   The insidious nature of defendants' sales practices is exemplified by plaintiff's experience.   In order to reap the sales available in the lucrative seniors' market, defendants shifted the financial risk of death to the annuitant and used misleading marketing materials which failed to disclose the substantial penalties associated with the annuities defendants sold.   Beyond this, Americus Digioia ("Digioia") was 89 years of age when he purchased an American Investors Life Insurance Company, Inc. deferred annuity pursuant to the company's standardized misleading marketing

materials.  The annuity does not mature until 2020 — well beyond Mr. DiGioia's actuarial life expectancy at the time of purchase.

2.      Since the mid 1990's, AmerUs Life Insurance Company and American Investors Life Insurance Company, Inc., and their affiliated entities, have increasingly targeted their deferred annuity sales efforts towards senior citizens.  In doing so, they have failed to comply with applicable insurance disclosure requirements, consumer protection statutes, the common law, and their own internal policies and procedures.  For example, defendants have sold, and continue to sell deferred annuities that do not mature for 10-20 years or more to senior citizens who often need immediate access to their money to pay for health and long term care.  They also have sold and continue to sell deferred annuities that do not mature until after the purchaser's actuarial life expectancy.  In addition, defendants have engaged in "churning" activities by persuading seniors to surrender existing annuities and/or borrow against the cash value in existing life insurance policies to purchase defendants' annuities without informing them that they may incur substantial surrender charges and penalties, and pay additional sales commissions.  Further, defendants repeatedly failed to include in their standard form annuity contracts, sales illustrations and related marketing materials, all material facts necessary to adequately inform prospective senior citizen annuity purchasers of the true risks and unsuitability of these products.  Defendants similarly have failed to properly train and supervise their annuity sales force to abide by applicable laws and their own internal policies and procedures for selling deferred annuities to senior citizens.

3.      Annuities pool the risk of living beyond the annuitant's life expectancy.  A consumer who purchases a traditional fixed annuity, typically acquires, in exchange for an up-front payment, the right to a stream of periodic payments from the insurer that is guaranteed to

continue for as long as the annuitant is alive.  The traditional fixed annuity also is known as an

"immediate annuity" because the annuitant begins receiving payments immediately after tender

of the premium to the insurer.  Traditional fixed annuities can provide comfort and protection for

persons who fear that they may outlive their assets.

4.      In contrast to an immediate annuity, a deferred annuity — the type of annuity at

issue in this complaint — is an asset accumulation product.   As a leading authority has

commented:

> It is important to keep in mind that there are two different products called
> 'annuities' offered by the insurance industry, and they have very little in
> common.    The first such product, the deferred annuity, is basically an
> investment vehicle.    Deferred annuities…have settlement options which
> provide a periodic income, but the settlement options are most often not elected
> and almost never play an important part in the purchase or selection of a
> particular deferred annuity.

Albert E. Easton & Timothy F. Harris, *Actuarial Aspects of Individual Life Insurance and*

*Annuity Contracts* (ACTEX Publications, 1999) at 20.

5.      Purchasers of deferred annuities select from a limited number of investment

options.  For example, defendants offer annuitants the option of investing premiums in: (a) an

account guaranteeing a fixed minimal rate of interest return; (b) an account whose rate of interest

return is dictated by a specific market "index," *e.g.*, Dow Jones Industrial Average, Standard &

Poor's Composite Stock Index, etc.; or (c) an account which combines and/or blends these 2

interest accrual methods.[1]  Annuitants expect the value of the account to grow prior to using the

accumulated account assets during retirement.

---

[1]  These latter 2 types of deferred annuities are sometimes referred to in the insurance industry as either "equity-indexed" or "multiple-choice" annuities.  However, all of the deferred annuities sold by defendants provide for the repayment of the invested principal amount upon the annuity's maturity, together with any earned accumulated interest — which amount is determined by the particular interest accrual vehicle selected by the annuitant at the time of purchase, *e.g.*, fixed, equity-indexed, or multi-choice.  According to the National Association of Securities Dealers ("NASD") and well recognized industry publications, equity-indexed annuities are generally considered more risky in terms of their ability to ensure the annuitant receives more than just the return of annuity's initial

6.     Annuitants who withdraw any portion of their initial investment or accrued interest within the first 10-15 years incur substantial surrender charges and/or penalties which severely limit access to their funds.   This inherent lack of flexibility, coupled with the diminishing resources of the elderly, prompted enactment of Senior Insurance protection provisions in various states where defendants principally sell their annuities (the "Market States") and impose a duty of honesty, good faith and fair dealing upon insurers when selling new or replacement deferred annuity products to senior citizens.   In addition, they prohibit "churning" and similar unscrupulous sales practices.   They also require insurers to adhere to strict disclosure requirements in connection with such sales to ensure the suitability of the proposed annuity to the senior citizens' actual insurance and financial needs.

7.     Further, only licensed insurance agents may solicit, offer and sell annuities in Pennsylvania and the Market States.   *See, e.g.*, 40 P.S. §310.31 (West 2005); Cal. Ins. Code §1631; Ohio Admin. Code §3901-6-01(E)(34) (West 2004); Fla. Stat. Ann. §626.112 (West 2004); Tex. Ins. Code §4001.101 (2004); Wash. Rev. Code Ann. §48.17.060 (West 2005).   The licensing requirement is intended to guarantee that consumers receive appropriate and informed guidance from a duly qualified agent, as well as ensure accountability for any statutory or common law sales violations.   The licensing requirement accordingly limits those permitted to transact insurance to professional agents and brokers -- persons who not only have the training and knowledge to counsel prospective insureds -- but who are required to refrain from misleading the vulnerable consumer.   For example, insurance agents are required to disclose all facts and information which may be "material" to a prospective annuitant's decision to purchase a

---

principal investment upon its maturity.  This is because the guaranteed minimum return for an equity-indexed annuity is typically only 90% of the initial premiums paid, and these types of annuities also generally have higher surrender charges and longer surrender and maturity periods than fixed deferred annuities.

deferred annuity product.  An agent's failure to disclose or concealment of such material facts entitles the injured party to rescind the insurance contract.

8.      In response to these insurance law requirements, in the early 1990's AmerUs Life Insurance Company and American Investors Life Insurance Company, Inc., jointly developed and implemented an internal policy and practice whereby senior citizen annuitant applicants 75 years of age or older are ineligible to purchase a single or flexible premium deferred annuity absent the issuance of an age exemption by management level supervisors.

9.      However, defendants do not conduct any due diligence, or otherwise attempt to objectively verify the suitability of their deferred annuity products for senior citizens. Defendants do not even require management to speak to the potential policyholder prior to issuing an age exemption.  Instead, defendants offer sales agents a lucrative commission for sales of deferred annuities to senior citizens.

10.      By this action, plaintiff, on behalf of himself and all other affected senior citizen purchasers of defendants' deferred annuity products, seek an order enjoining defendants from, among other things, selling a deferred annuity without first determining its suitability for the prospective purchaser and, from ever selling a deferred annuity that does not mature until after the prospective purchaser's actuarial life expectancy.  Plaintiff also seeks treble damages for violations of RICO together with monetary and punitive damages, statutory damages, restitution, injunctive and such other equitable relief as may be appropriate to redress defendants' wrongful conduct in selling senior citizens annuity products that are inappropriate, unsuitable and detrimental to persons in their age group, often by means of the improper replacement of existing annuities and/or life insurance policies.

## II.   JURISDICTION AND VENUE

11.     Original jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332(d)(2) (2005).[2]   This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 (2005).

12.     The amount in controversy exceeds $75,000 for plaintiff, exclusive of interest and costs, and includes the combined loss of annuity benefits and accumulated cash value, the payment of surrender charges, and plaintiff's pro rata share of punitive damages, injunctive and equitable relief, and attorney fees, in which plaintiff and each class member have an undivided interest.  Plaintiff further alleges, upon information and belief, that less than one-third of all class members reside in the Commonwealth of Pennsylvania and the cumulative amount in controversy for the class exceeds $5,000,000.

13.     Venue is proper within this judicial district pursuant to 28 U.S.C. §1391(b), (c) and (d) (2005).  Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein arose in part within this judicial district and has been carried out in part within this judicial district.

## III.   PARTIES

14.     Plaintiff Americus Digioia, is and at all times mentioned herein was a resident and citizen of the Commonwealth of Pennsylvania, and over 65 years of age and thus a senior citizen.

15.     Defendant AmerUs Life Insurance Company ("AmerUs Life") is, and at all relevant times herein was, a corporation duly organized and existing under the laws of Iowa.

---

[2]  The claims asserted herein arise under RICO, 18 U.S.C. §1961 (2004), *et seq.*  Thus, original jurisdiction is also proper pursuant to 28 U.S.C §1331 (2005).

16.    Defendant American Investors Life Insurance Company, Inc. ("American Investors"), the sister company of AmerUs Life is, and at all relevant times herein was, a corporation duly organized and existing under the laws of Kansas.

17.    Defendant AmerUs Annuity Group Co. is, and at all relevant times herein was, a corporation duly organized and existing under the laws of Kansas.

18.    Defendant AmerUs Group Co. (a.k.a. AmerUs Group Co./IA) is, and at all relevant times herein was, a corporation duly organized and existing under the laws of Iowa. AmerUs Group Co., is publicly traded on the New York Stock Exchange under the trading symbol "AMH."

19.    American Investors is the wholly owned subsidiary of AmerUs Annuity Group Co.  And, in turn, AmerUs Annuity Group Co. and AmerUs Life are wholly owned subsidiaries of AmerUs Group Co.

20.    There exists, and at all relevant times herein mentioned, there existed a unity of interest and ownership between AmerUs Group Co. and its wholly owned subsidiaries American Investors, AmerUs Annuity Group Co. and AmerUs Life, such that any individuality and separateness between them has ceased.  In addition to its ownership interest, AmerUs Group Co. operated, managed, joint ventured, maintained and controlled the activities of defendants AmerUs Annuity Group Co., AmerUs Life and American Investors such that AmerUs Group Co. is their alter ego.

21.    For example, upon information and belief, plaintiff alleges that the deferred annuity operations of American Investors and AmerUs Life are performed by the same employees and supervised by the same management at the Topeka, Kansas corporate offices of American Investors.  Thus, American Investors and AmerUs Life are, and at all relevant times

herein mentioned were, mere shells, instrumentalities and conduits through which their corporate parents carried on the business of insurance nationwide.  Therefore, the activities, acts and omissions of defendants AmerUs Annuity Group Co., AmerUs Life and American Investors were and are, in reality, the activities, acts and omissions of the parent AmerUs Group Co.

22.     Consequently, based upon plaintiff's information and belief, adherence to the fiction of the existence of AmerUs Group Co. as an entity separate and distinct from the other defendants would permit an abuse of the corporate privilege and would promote injustice by protecting AmerUs Group Co. from liability for the wrongful acts committed by it under the name of AmerUs Annuity Group Co., AmerUs Life and American Investors.  Plaintiff shall refer to AmerUs Annuity Group Co., AmerUs Life, American Investors, and their common corporate parent AmerUs Group Co., collectively as the "American Investors Defendants" or the "Company" in this complaint.

23.     Beginning in or about 1999, the American Investors Defendants substantially funded the operational expansion of IMOs such as Family First and its wholly-owned affiliate, Family First Advanced Estate Planning ("FFAEP").  FFAEP operated what is commonly called a "trust mill," which principally focused on selling low-cost estate planning services to senior citizens.  In return for their funding, the American Investors Defendants gained control over the annuity marketing operations of Family First, as well as the corresponding trust mill and financial planning operations of its affiliate FFAEP.  The American Investors Defendants also obtained an option to later purchase both of these companies.  The American Investors Defendants exercised this option in late 2001 and merged the multi-state trust mill and annuity sales operations of Family First and FFAEP.  Thereafter, the American Investors Defendants controlled their multi-state operations for the purpose of furthering the sale of unsuitable

AmerUs Life and American Investors deferred annuities to senior citizens nationwide — first by selling estate planning services to senior citizens through various mass marketing techniques and then by selling annuities when the trust mill and/or financial planning representative, an insurance agent, delivers the trust or other documents.

24.     In their public filings with the United States Securities and Exchange Commission ("SEC"), the American Investors Defendants describe entities like Family First as "independent marketing organizations" or "IMOs" and disclosed that Family First is but one of 5 such entities which the Company owned during the relevant time period.  According to the American Investors Defendants' recent A.M. Best Company, Inc. November 24, 2004 report, these 5 Company-owned IMO's generated over 75% of all deferred annuity sales for the American Investors Defendants in 2003.

25.     Plaintiff believes and thereby alleges that at all times mentioned herein, each of the defendants were the agents, employees and partners of each of the remaining defendants, and were acting within the scope and authority of such agency, employment and partnership, and with the knowledge, consent, approval, and ratification of the remaining defendants.  Plaintiff further alleges that at all times material the sales agents employed by the defendants were acting within the course and scope of such employment when marketing and selling American Investors and AmerUs Life deferred annuity products to plaintiff and class members.

26.     Whenever this complaint references acts of any defendant or defendants, such allegation shall be deemed to mean the acts of those defendants named in the particular cause of action and each of them acting, individually, jointly and severally.

IV.   **DEFENDANTS' TRUST MILL AND FINANCIAL**
      **PLANNING DEFERRED ANNUITY SALES SCHEME**

27.     The American Investors Defendants are titans in the deferred annuity industry, with over 267,000 deferred annuities in force as of December 31, 2003, with a corresponding face value of approximately $12 billion.  The Company markets and sells its annuity products nationwide primarily through its wholly-owned IMO network, which accounts for over 75% of all sales.  The Company's 5 IMO's typically only sell the American Investors Defendants' annuity products.   The remaining 25% of the Company's annual annuity sales are generated by approximately 10 other smaller IMO's and brokerage firms, including but not limited to such entities as: Johnson Estate Planning; Estate Planning Services; Studebaker & Associates Insurance Services, Inc. ("Studebaker & Associates"); Group Legal Services, Inc. ("Group Legal"); Senior Law Practice Group P.C.; AmeriEstate Legal Plan, Inc.; Estate Preservation, Inc.; and Gentry Group, Inc. a.k.a. Addison Insurance Marketing, Inc. and The Addison Group, which are under contract with the American Investors Defendants to sell the Company's deferred annuity products — many on a preferred basis.   Plaintiff hereby reserves the right to amend these pleadings to include these parties as additional defendants as their relationship with defendants becomes clearer.  These contracted sales organizations are required to strictly adhere to the sales procedures and protocols dictated by the American Investors Defendants, which include using only the standard annuity marketing materials, illustrations and form contracts created and authorized by the Company, and refraining from deviating from the Company's sales presentation scripts.

28.     For at least the last decade, the American Investors Defendants increasingly steered their annuity marketing and sales efforts towards the senior market because of the billions of dollars in assets maintained by seniors.  Further, seniors are generally susceptible to

defendants' deceptive and misleading sales practices which prey on their fears of risky and unsecured investments.

29.     The American Investors Defendants' formula for their successful annuity sales program primarily consists of a simple 2 step process.  First, agents of the Company's IMO's and/or their trust mill and financial planning affiliates (like American Family Legal Plan, Family First and its affiliate FFAEP) are carefully trained to approach prospective senior citizen annuitants under the guise of offering to provide low-cost estate and/or financial planning services.  For example, training begins immediately upon employment with IMO's Family First and FFAEP.  Agents are required to attend a 3 day training course at the Company's Woodland Hills headquarters.  During the 3 day course, agents are taught techniques for selling living trusts (either an original trust, a restatement of an existing trust or a "completion" of an existing trust) and other estate and/or financial planning services to seniors, including, *inter alia*:

   a.     To misrepresent themselves as estate and financial planning experts offering free or low cost in-home consultations to senior citizens purportedly to educate them about protecting their rights, estate and financial assets.  Agents are given business cards which identify them as a "Group Legal Representative" with "Family First Advanced Estate Planning."  They do not disclose to senior citizens that they are not attorneys, have no legal training, are not experts in estate or financial planning, are not versed in matters of "advanced" estate planning, "professional" or financial services, or that they are agents with the mission of selling annuities;

   b.     To engage in the unauthorized practice of law by offering legal opinions on the purported benefits and advantages of living trusts and other estate planning products and financial services to persuade senior citizens to purchase these products and services;

   c.     To illegally solicit senior citizens to purchase estate and financial planning services;

   d.     To provide senior citizens with a training manual, video, "presentation book" and other standardized marketing materials that misrepresent the benefits and advantages of living trusts, exaggerate the costs associated

with a probated estate and misrepresent the nature and extent of a probate proceeding;

e.  To use the free in-home estate and financial planning consultations to access confidential financial information from which they can identify senior citizens with available assets to purchase defendants' annuities and sell them annuities; and

f.  To conceal that they are sharing fees with lawyers and that most of the fees are not for legal services but for defendants' solicitation services related to the sale of annuities.

30.  To guide the "junior agents" along what Family First calls the "Path to Prosperity" to becoming a "senior agent" and annuity salesperson, junior agents are armed with standardized forms designed to elicit financial and other information necessary for the preparation of legal documents.  In the process of helping the senior citizens complete the forms, defendants' agents work towards gaining the seniors' trust and confidence while simultaneously determining whether the senior citizens have available assets to purchase the American Investors Defendants' annuity products.  The agents are specifically trained to identify all assets and list them in standardized documents.

31.  After the agents complete the standardized forms, FFAEP forwards them to Group Legal, who in turn, provides them to an attorney for finalization.  The agents do not disclose that they are not estate planning experts and that Group Legal is not a bona fide group prepaid legal plan but, a subterfuge for Family First's mass-marketing of trusts by persons engaged in the unauthorized practice of law.  They also do not disclose that an attorney will do minimal work, if any, on the trust and will receive 20% or less of the fee, with most of the remainder going to FFAEP.  Seniors also are not told that a "senior agent" will deliver their asset-protecting trust and attempt to sell them an annuity.

32.     To reach "senior agent" status and sell annuities, "junior agents" must attend another 3 day training course at American Investors' headquarters on annuity sales that focuses on sales techniques designed to mislead senior citizens regarding the purported benefits and advantages of annuities versus other forms of investments, and to engender in the targeted senior citizens a false sense of trust in the agents.  More particularly, the agents are trained to:

a.      Use the "Two Minute Irresistible Presentation" wherein agents conceal load-commissions and other costs and misrepresent that in the event of a medical emergency or death, Family First/FFAEP will always be there to offer assistance to the senior citizen and his family — regardless of how far into the future this event may take place;

b.      Frighten senior citizens into believing their other investments, including money in banks, are not safe;

c.      Use the "7 Page Presentation" to misrepresent that money placed into annuities is "guaranteed" and is the safest investment possible as compared to money in banks or the stock market, and to draw unfair analogies of the relative investment risks (*e.g.*, an annuity is safe like the foundation of a house; a stock is like an unsafe attic in an earthquake);

d.      Falsely represent that annuities will enable them to qualify for Medicaid should they suffer a long term illness that could waste assets; and

e.      Falsely describe surrender penalties without disclosing all surrender charges.

33.     After they complete their annuity sales training, the senior agents use defendants' "Two Minute Irresistible" and "7 Page Presentation" sales scripts, and other preprinted marketing material to extol the virtues of the Company's deferred annuity products as providing "guaranteed" investment returns and "lifetime income" while remaining "nursing home safe." These representations are untrue and deceptive because they fail to disclose the high commissions and other surrender charges that remain in effect for the first 10-15 years of the annuity, that the annuity will not mature until after the actuarial life expectancy of the annuitant,

and that annuities are not exempt from the criteria used by governmental agencies to determine eligibility for government-sponsored senior assistance programs such as Medicaid.

34.     Further, the Company's sales brochures uniformly fail to disclose that the defendants' deferred annuities include a death benefit surcharge -- even though the brochures prominently feature the "death benefit" provision as a key attribute.  To find this death benefit surcharge, one has to search through a maze of fine print in the annuity contract itself, where it is strategically hidden because defendants knew the death benefit surcharge frustrates a primary purpose senior citizens have in purchasing such an annuity.  Indeed, the American Investors Defendants intentionally designed their deferred annuity contracts to mislead and confuse senior citizens and obfuscate the very provisions which make the annuity inherently unsuitable for seniors, *e.g.*, the annuity's harsh surrender terms and penalties, the volatile nature of its interest accrual features (particularly with equity-indexed deferred annuities), and limitations on withdrawals -- even upon the contract's annuitization or the annuitant's death.

35.     Defendants' annuity contracts obscure and hide penalty provisions by, *inter alia*, the use of false and misleading directions and mislabeled section headings, indistinguishable text characteristics, confusing verbiage, inconsistent and ambiguous definitions, and "chain" provisions requiring the reader to refer from one provision to another provision in a concerted effort to conceal these penalties.

36.     Adding to the egregious nature of defendants' conduct is that sales agents from the Company's 5 wholly-owned IMO's represent themselves to prospective senior citizen annuitants as being completely independent from the American Investors Defendants when just the opposite is true.  For instance, Family First and FFAEP are specifically beholden to American Investors to sell its annuities instead of its competitors' annuities based on their financial relationship.

Additionally, at no time are seniors ever told that the agent is permitted to only recommend the Company's annuity products, nor are they told about the high commissions and performance bonuses defendants pay their agents, *e.g.*, the top sales producers receive cash bonuses and free vacations to exotic locations in Europe and the Caribbean.  These conflicts of interest are universally concealed by the American Investors Defendants in all annuity transactions.

37.     Regardless of which IMO or brokerage firm they are employed by, all sales agents are instructed that to avoid immediate termination and/or forfeiture of sales commissions, they are not to deviate from the limited information presented in the Company's standard form annuity contracts, uniform pre-printed sales illustrations, and marketing materials when making sales presentations.  Agents also are instructed not to conduct the in depth client interview necessary to obtain the information crucial for a management level supervisor to make an objectively informed, good faith determination of whether a deferred annuity age exemption should be issued.  Indeed, American Investors does not even require management to speak to the potential annuitant prior to issuing an age exemption.  Rather, the age exemptions are systematically issued in nearly each and every instance and without regard to the actual suitability of the annuity for the senior citizen applicant's insurance and financial needs.

38.     Because senior citizens will not live to see the return on such a long-term investment and often need access to their money to pay for health care and nursing homes, a deferred annuity is simply not a suitable investment.

## V.     CONSPIRACY/AIDING & ABETTING ALLEGATIONS

39.     The American Investors Defendants have not engaged in the above described wrongful acts and practices alone.  Instead, they acted as part of a common scheme and conspiracy with other IMO's, including American Legal Plan, brokerage firms, and un-named

co-conspirators who agreed to market and sell American Investors' unsuitable deferred annuities to senior citizens.

40.     Each defendant and member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy.  They also agreed to, and actually committed, the above-alleged acts of fraud and unlawful conduct with the goal of depriving plaintiff and other class members of their money and property in connection with the sale of unsuitable deferred annuities.

41.     Indeed, for the fraudulent deferred annuity marketing and sales scheme described above to be successful, each defendant and other members of the conspiracy had to agree to enact and utilize the same devices and fraudulent tactics against the plaintiff and class members.

42.     Numerous common facts and similar activities evidences the existence of a conspiracy among all of the defendants and other sellers of the American Investors Defendants' deferred annuities, including, *inter alia*: (a) senior citizens are intentionally targeted for the marketing and sale of deferred annuities with maturity dates beyond their actuarial life expectancy; (b) deferred annuity sales presentations are commonly made by agents of Family First and other IMO's such as American Family Legal Plan, and brokerage firms owned, operated or controlled by the American Investors Defendants, in conjunction with a so-called "estate planning services" and/or "financial planning services" sales pitch; (c) the American Investors Defendants' own internal deferred annuity senior citizen age exemption protocols and procedures are deliberately disregarded; (d) existing policyholders with large accumulated cash values are churned into defendants' deferred annuity products; and (e) the lavish incentives that the American Investors Defendants offer their annuity sales force.

43.     Within the applicable statute(s) of limitations, the conspiracy was conducted through and implemented by: (a) defendants' sharing of its policyholder lists with IMOs and brokerage firms for the purpose of generating annuity sales; (b) the American Investors Defendants' development of uniformly deceptive and misleading sales materials, illustrations and scripted sales presentations which were disseminated to their sales force; (c) defendants' use of agents to promote low-cost estate and financial planning services as means to facilitate deferred annuity sales to senior citizens; (d) defendants' direction to their sales force to refrain from collecting information concerning a prospective senior citizen's suitability for American Investors' deferred annuity products; and (e) the American Investors Defendants' utter disregard of the Company's internal deferred annuity age exemption protocols and procedures.

## VI.     AMERICUS DIGIOIA'S INDIVIDUAL TRANSACTION

44.     Within the applicable statute of limitations, defendants, through their standardized marketing materials and the sales presentation performed by a duly appointed American Investors Life Insurance Company, Inc. insurance agent, induced Mr. Digioia to purchase American Investors Life Insurance Company, Inc., "Flexible Premium Deferred Annuity Policy" deferred annuity issued under policy number 468309.  Mr. DiGioia's premium payments on this deferred annuity was $78,415.71.  The annuity has a maturity date of January 10, 2020 and further provides for a 12 year surrender charge period.

45.     Defendants' scheme involved the use of a Trust "mill," whereby through scare tactics, including exaggerating costs attributable to probating estates, senior citizens are lured into purchasing living trusts and long term deferred annuities.  Mr. Digioia was enticed into purchasing the unsuitable American Investors Life Insurance annuity through such a scheme.  As part of the scheme the representatives of the IMO, in this case American Family Legal Plan, hold

themselves out to senior citizen victims as independent or neutral estate or financial planners, acting for or on behalf of an attorney who can prepare their legal documents, and they lead the senior citizen victim into believing they are acting in his or her best interests, never telling the senior citizen victim of their true identity and purpose, which is to sell annuities to senior citizens, regardless of whether the senior citizen needs them.

46.     American Family Legal Plan, one of Defendants' IMO's, held itself out as an experienced expert in the area of estate planning, informing Mr. Digioia that it could provide estate planning services that would benefit him.  Representatives of American Family Legal Plan made presentations to Mr. Digioia in his home, ostensibly concerning estate planning, and Mr. Digioia was given counseling regarding estate planning.  Through these counseling sessions, American Family Legal Plan induced Mr. Digioia to purchase the unsuitable American Investors deferred annuity, which had a 2020 maturity date, well beyond Mr. DiGioia's actuarial life expectancy.

47.     At no time, either prior, during or after these in home counseling sessions, was Mr. Digioia informed that the American Family Legal Plan representatives he spoke to were insurance agents and that their true objective in meeting him and offering him estate planning services was to solicit him to purchase an American Investors Life Insurance Company annuity. American Family Legal Plan did not offer Mr. Digioia any choice in annuity products or companies, further Mr. Digioia was never informed of the restriction, early withdrawal penalties and other aspects of the annuity which made it completely unsuitable for Mr. Digioia.

48.     American Family Legal Plan also induced Mr. Digioia to purchase a living trust through attorney Brett Weinstein.  Attorney Weinstein, working hand in hand with American

Family Legal Plan, made American Family Legal Plan his delivery agent with respect to the living trust and related documents.

49.     All of this was part of a scheme to induce Mr. Digioia to engage in unneeded estate planning and purchase unsuitable annuity products, thus reaping fees for everyone involved at Mr. DiGioia's expense.

50.     At the time of the annuity purchase plaintiff Americus Digioia was 89 years old. In 2020, on the maturity date for the policy, Mr. Digioia, assuming he is still alive, will be 104 years old.  Thus, under the American Investors Defendants' internal protocols and procedures, Mr. DiGioia's purchase required the issuance of an age exemption following a determination of the suitability of the annuities for their insurance and financial needs.  However, no such suitability review was conducted by the American Investors Defendants prior to issuance of an age exemption for Mr. DiGioia's annuity purchases.

51.     Mr. Digioia was harmed by his American Investors Life deferred annuity purchase because of its extended maturity date, restricted fund access and substantial surrender charges which makes it an unsuitable financial product for him.

52.     In contrast, this annuity transaction benefited the American Investors Defendants and its sales agent who collected premiums, fees and commissions from the sale of the annuities.

**VII.    RICO ALLEGATIONS**

 **A.      The American Investors Annuity Enterprise**

53.     Plaintiff and class members are each "persons" within the meaning of 18 U.S.C. §1961(3) (2004), and each of them has sustained injury to their business or property as a result of the acts and the conduct of the defendants described herein.

54.     Based upon plaintiff's current knowledge, the following group of individuals associated in fact (which plaintiff refers to as the "American Investors Annuity Enterprise" ("AIAE")) is responsible for the marketing, solicitation and sale of various types of immediate and deferred American Investors and AmerUs Life annuity products to members of the general public — which include, as a subpart thereof, senior citizens — and constitutes an "enterprise" as that term is defined in 18 U.S.C. §1961(4) (2004): (a) the American Investors Defendants who underwrite and issue the annuities; and (b) the IMO's, brokerage firms and agents  that the defendants have contractually engaged for the purpose of assisting, perfecting and furthering their wrongful scheme to market and sell American Investors and AmerUs Life annuity products to senior citizens.

55.     The AIAE is an ongoing organization which engages in, and whose activities affect, interstate commerce.

56.     While the defendants participate in and are members and part of the AIAE, they also have an existence separate and distinct from the enterprise, and each of the defendants are "persons" as defined by 18 U.S.C. §1961(3) (2004).

57.     To successfully market and sell unsuitable deferred annuities to senior citizens in the manner set forth above, defendants required a systematic means to control the substantive information provided to prospective purchasers at the point of sale, including concealing the inherent unsuitability of an investment vehicle that in all likelihood will not mature until long after the senior citizen purchaser has died.  The AIAE provides defendants with such a system and ability, and their control of and participation in it is necessary for the successful operation of their scheme.  The defendants control and operate the AIAE by:

a.     Designing and issuing deferred annuity products with extended maturity dates, high surrender charges and steep commissions for sale to senior citizens;

b.     Developing themselves, and through Family First and the other IMO's controlled by the American Investors Defendants, programs for "low-cost" senior citizen estate and/or financial planning services to be performed by their IMO's and/or their affiliates as a means to facilitate the sale of defendants' unsuitable deferred annuity products to senior citizens, often including misrepresenting themselves as "paralegals," "estate planners" or "financial planners" to gain entry to seniors' homes and to learn their confidential financial information otherwise unavailable to them as "insurance agents;"

c.     Developing uniform marketing materials, standardized annuity contracts and scripted sales presentations, including but not limited to those materials developed at annual conventions and in programs such as "Annuity University" which focus on how to target seniors and other high pressure sales techniques, all of which extol the purported safety of deferred annuities for purchase by senior citizens while concealing their true unsuitability for use by the Company's sales force (principally through captive IMO's);

d.     Developing by themselves, and through IMO's directly owned and controlled by the American Investors Defendants, uniform sales techniques to "churn" senior citizens into purchasing deferred annuities from the American Investors Defendants, for example by recommending that instead of receiving low returns on CDs, the senior may wish to transfer their money into an annuity paying 8% without disclosing its associated penalties;

e.     Directing and controlling the Company's sales force's strict adherence to and use of uniform and standardized sales materials, techniques and presentations developed and authorized by defendants to market and sell unsuitable deferred annuities to senior citizens, frequently within 90 days of the date of the trust sold via the "estate planning" services;

f.     Developing and implementing a comprehensive sales incentive program whereby the American Investors Defendants tracked and measured the success of their sales force's deferred annuity sales and lavishly rewarded their top sales producers with cash bonuses, exotic vacations and other substantial sales perks, and by paying high commission costs to independent agents for steering business to them, costs passed on to the annuitant and factored into the underwriting criteria;

g.     Accepting applications for, and issuing deferred annuity products to, senior citizens even though the maturity dates for such products were beyond the actuarial life expectancy of the annuitant and, thus, were inherently unsuitable investments; and

h.     Imposing and/or collecting improper annuity charges from plaintiff and other class members upon their surrender of all or part of their annuity and/or in the event the annuitant dies within the annuity's surrender period.

58.     As set forth above, the AIAE has an ascertainable structure separate and apart from the pattern of racketeering activity in which the defendants engage.  For example, the AIAE operations include the marketing, solicitation and sale of various types of American Investors and AmerUs Life annuity products to persons under age 65, as well as senior citizens.   In addition to the unsuitable deferred annuities at issue, the products include immediate annuities that enable the annuitant to receive income distributions immediately upon purchase, as well as deferred annuities with maturity dates within the actuarial life expectancy of the annuitant. Notwithstanding the availability of annuity products that are suitable for purchase by senior citizens, defendants have exerted control and dominance over the operations of AIAE for the purpose of furthering their unlawful scheme of targeting senior citizens specifically for the marketing and sale of unsuitable deferred annuity products.

**B.**     **Predicate Acts**

59.     Section 1961(1)(B) (2004) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (2002) (relating to mail fraud) and 18 U.S.C. §1343 (2002) (relating to wire fraud).  As set forth below, defendants have and continue to engage in conduct violating each of these laws to effectuate their scheme.

60.     In addition, to effectuate their scheme, each of the defendants sought to and did aid and abet the others in violating the above laws within the meaning of 18 U.S.C. §2 (2005).

As a result, their conduct is indictable under 18 U.S.C. §§1341 and 1343 (2002) on this additional basis.

     **C.**   **Violations of 18 U.S.C. §§1341 and 1343**

     61.    For the purpose of executing and/or attempting to execute the above-described scheme to market and sell unsuitable deferred annuities to senior citizens by means of false pretenses, representations or promises, the defendants, in violation of 18 U.S.C. §1341 (2002), placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service or commercial interstate carriers, including, but not limited to, deferred annuity marketing brochures, performance illustrations, applications, contracts, sales presentation scripts, training manuals and video tapes, correspondence, annuitant leads lists, premium and commission payments, reports, data, summaries, statements, and other materials relating to the marketing and sale of defendants' deferred annuities.

     62.    For the purpose of executing and/or attempting to execute the above-described scheme to defraud or obtain money by means of false pretenses, representations or promises, the defendants, also in violation of 18 U.S.C. §1343 (2002), transmitted and received by wire, matter and things, which include, but are not limited to, annuitant applications, sales presentation scripts, correspondence, annuitant leads lists, premium and commission payments, reports, data, summaries, oral and written statements, faxes, and other deferred annuity materials.

     63.    The matter and things sent by defendants via the Postal Service, commercial carrier, wire or other interstate electronic media as identified above include, *inter alia*:

     a.    False and fraudulent representations that defendants' deferred annuity products are safe and suitable for purchase by senior citizens;

b.    Material omissions of fact concealing that defendants would and did use the fraudulent and unlawful sales techniques and presentations and the deceptive and misleading sales materials and annuity contracts described above to solicit and induce the plaintiff and other members of the Class into purchasing defendants' unsuitable deferred annuities, either as new stand alone purchases or through the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy;

c.    False and deceptive representations concerning the purported "independence" of the IMO's and brokerage firms marketing and selling the defendants' deferred annuities to senior citizens when, in fact, many of those entities, are secretly owned, operated and controlled by defendants; and

d.    Material omissions of fact that the sales agents employed by the IMO's and brokerage firms are required (and highly incentivized) to adhere to defendants' scripted sales materials and thus are not providing prospective annuitants with "independent" estate and financial planning services or insurance advice as represented.

64.    The defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving the plaintiff and the Class and obtaining their monies and property for defendants' gain.

65.    The defendants either knew or recklessly disregarded the fact that the misrepresentations and omissions described above and incorporated herein were material, and plaintiff and the Class relied on the misrepresentations and omissions as set forth above.

66.    As a result, defendants have obtained money and property belonging to the plaintiff and Class Members, and plaintiff and the Class have been injured in their business or property by the defendants' overt acts of mail and wire fraud, and by their aiding and abetting each other's acts of mail and wire fraud.

### D. Pattern of Racketeering Activity

67.     The defendants have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. §1961(5) (2004), by committing or aiding and abetting in the commission of at least 2 acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. §§1341 and 1343 (2002) as described above, within the past 10 years.  In fact, each of the defendants has committed or aided and abetted in the commission of thousands of acts of racketeering activity.  Each racketeering act was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including the plaintiff and other members of the Class.

68.     The multiple acts of racketeering activity which defendants committed and/or conspired to, or aided and abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5) (2004).

### E. RICO Violations

69.     Defendants, through the conduct described above, acquired, maintained and exercised control over the AIAE enterprise, which was engaged in or affected interstate or foreign commerce.  Therefore, defendants have violated 18 U.S.C. §1961(1)(B) (2004).

70.     As a direct and indirect result of defendants' conduct as described above, substantial income was generated and received by and came under the control of defendants. Defendants used that income to establish and/or operate the AIAE enterprise described herein, which was engaged in interstate or foreign commerce.  Therefore, defendants have violated 18 U.S.C. §1962(a) (2005).

71.     Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…."  Through the patterns of racketeering activities outlined above, the defendants have conducted and participated in the affairs of the AIAE.

72.     Each of the defendants willfully agreed to, and did, materially participate, directly or indirectly, in the conduct of the affairs of the AIAE through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and each defendant so participated in violation of 18 U.S.C. §1962(c) (2005).

73.     Additionally, Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Defendants' conspiracy to defraud the plaintiff and other class members of their money and property from the sale of unsuitable deferred annuities pursuant to the scheme described above violates 18 U.S.C. §1962(d) (2005).

## VIII.   CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action for himself and on behalf of all persons in the Market States, or such states as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).  The class of persons which plaintiff seeks to represent is defined as:

> All persons who within the applicable statute of limitations of the date of the commencement of this action, and while 65 years of age or older, purchased one or more American Investors or AmerUs Life deferred annuities either directly, or through the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing

permanent life insurance policy, which annuity had a maturity date beyond the annuitant's actuarial life expectancy (the "Class" or "Class Members").

75.    Excluded from the Class are the defendants, any parent, subsidiary or affiliate of the defendant, any entity in which the defendants have a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors and assigns of such excluded persons or entities.

76.    This Class seeks certification of claims for damages pursuant to 18 U.S.C. §1962(d) (2005), for conspiracy to violate 18 U.S.C. §2 (2005), and for aiding and abetting in violation of 18 U.S.C. §1962(c) (2005).   The Class also seeks certification of claims for injunctive relief, restitution, disgorgement and monetary and exemplary damages under the consumer protection statutes of the Commonwealth of Pennsylvania and similar statutory enactments of the Market States.

77.    Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.   Specifically, the American Investors Defendants' 2004 Form 10-K filing with the SEC reveals that American Investors had over 272,977 deferred annuities in force as of December 31, 2004.   Plaintiff alleges on the basis of information and belief that the vast majority of those annuitants are senior citizens who can be readily identified through defendants' records.   Therefore, class notice easily can be mailed to all class members in the event the Class is certified by this Court.

78.    This action involves questions of law and fact common to plaintiff and all members of the Class concerning violations of RICO, state consumer protection and elder abuse statutes.   These common questions predominate over any issues affecting individual members of the Class and include:

a.  Whether defendants deployed a scheme or artifice to deceive and engaged in a common course of business conduct which deceived or misled the plaintiff and members of the Class into purchasing a deferred annuity with a maturity date beyond their actuarial life expectancy at the time of sale;

b.  Whether defendants failed to disclose to the plaintiff and other members of the Class material information concerning suitability, impact of and detriments from using some or all of the cash value of an existing life insurance policy or annuity to purchase a new American Investors or AmerUs Life deferred annuity by means of a lapse, surrender or withdrawal/partial surrender of a life insurance policy or annuity, or a life insurance policy loan;

c.  Whether defendants churned or twisted plaintiff and other members of the Class in connection with their purchase of the Company's annuities;

d.  Whether defendants developed, encouraged and engaged in a scheme designed to sell deferred annuities to their existing policyholders and annuitants through the concealment of material facts;

e.  Whether defendants utilized a common scheme employing common standardized misleading marketing materials and other deceptive sales practices in order to sell unsuitable deferred annuities to senior citizens;

f.  Whether defendants breached their duty of good faith and fair dealing with plaintiff and members of the Class or otherwise engaged in unfair, fraudulent or wrongful business practices during the relevant time period in connection with the marketing and sale of their deferred annuity products to senior citizens;

g.  Whether the plaintiff and members of the Class are entitled to damages, specific performance, injunctive relief, restitution, disgorgement or other equitable relief from the defendants; and

h.  Whether plaintiff and members of the Class have sustained damages as a result of defendants' wrongful conduct and, if so, what is the proper measure of such damages.

79.  The amount of restitution and damages awardable to plaintiff and each member of the Class readily can be determined from defendants' computer records and data.  There is no need for any manual computation of these amounts because, among other things, the precise

amount of money unreasonably, unlawfully, unfairly and wrongfully taken from plaintiff and each Class Member can be calculated through defendants' data processing system.

80.     Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

81.     There is no plain, speedy or adequate remedy other than by maintenance of this lawsuit as a class action because individual damages are relatively small, making it economically infeasible for Class Members to pursue remedies individually.   The prosecution of separate actions by individual members of the Class, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against defendants and would establish incompatible standards of conduct for defendants.

82.     The named plaintiff's claim is typical of those of the absent Class Members.  The named plaintiff is a member of the class of victims described herein.  Specifically, the Plaintiff is a senior citizen who was induced to purchase an unsuitable American Investors Life Insurance Company, Inc. deferred annuity based upon the deceptive and wrongful sales practices described herein and in contravention of the American Investors Defendants' age exemption protocols and procedures.   Therefore, the plaintiff's claim against defendants are typical of those of other members of the Class.

83.     The named plaintiff is willing and prepared to serve the Court and proposed Class in a representative capacity with all of the obligations and duties material thereto.  Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or which directly and irrevocably conflict with, the interests of other members of the Class.

84.     The self-interests of the named class representative is co-extensive with, and not antagonistic to, those of the absent Class Members.  The proposed representative will undertake to represent and protect the interests of the absent class members.

85.     The named plaintiff has engaged the services of counsel indicated below.  Said counsel are experienced in complex class litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise will represent the named class representative and absent Class Members.

86.     A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:  (a) individual claims by the plaintiff or Class Members are impractical as the costs of pursuit far exceed what plaintiff or any one Class Member has at stake; (b) as a result, although some class actions have been filed, there has been very little individual litigation over the controversies herein, and individual members of the Class have no interest in prosecuting and controlling separate actions; (c) it is desirable to concentrate litigation of the claims herein in this forum; and (d) the proposed class action is manageable.

## COUNT ONE

### (Civil RICO)

87.     Plaintiff refers to and realleges each and every preceding paragraph and incorporate those paragraphs as though set forth in full in this cause of action.

88.     This claim for relief arises under 18 U.S.C. §1964(c) (2005).

89.     In violation of 18 U.S.C. §1962(c) (2005), defendants have, as set forth above, conspired to violate 18 U.S.C. §1962(c) (2005) by conducting or participating in the conduct of, the affairs of the AIAE through a pattern of racketeering.

90.     As a result and by reason of the foregoing, plaintiff and Class Members have been injured, suffered irreparable harm and sustained damage to their business and property, and are therefore entitled to recover actual and treble damages, and their costs of suit, including reasonable attorney fees, pursuant to 18 U.S.C. §1964(c) (2005).

91.     In addition, as set forth above, defendants have violated 18 U.S.C. §§1962(c) and (d) (2005), and will continue to do so in the future.  Enjoining the defendants from committing these RICO violations in the future and or declaring their invalidity is appropriate pursuant to 18 U.S.C. §1964(a) (2005), which authorizes the district courts to enjoin violations of 18 U.S.C. §1962 (2005).

**WHEREFORE,** plaintiff and the Class demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT TWO

### (Violation of the Consumer Protection Laws at Each State)

92.     Plaintiff refers to and realleges each and every preceding paragraph and incorporate those paragraphs as though set forth in full in this cause of action.

93.     In marketing and selling deferred annuities to the plaintiff and members of the Class as described above, defendants engaged in unlawful, deceptive and unfair business acts and deceptive and misleading advertising within the meaning of 73 P.S. §§201-1 (West 2005), *et seq.*, and the similar statutory enactments of the other Market States, including consumer protection and consumer sales practices acts prohibiting unlawful, deceptive and unfair business practices and acts of unfair competition.  *See, e.g.*, Cal. Bus. & Prof. Code §§17200 (2005), *et seq.*; Fla. Stat. Ann. §§501.201 (West 2005), *et seq.*; Ohio Rev. Code Ann. §1345 (West 2004);

Tex. Bus. & Com. Code §§17.41 (West 2005), *et seq*.; Wash. Rev. Code Ann. §§19.86 (West 2005), *et. seq.*

94.     Defendants' acts of unfair competition and unlawful practices include violations of, *inter alia*, federal civil RICO and similar statutory enactments in the other Market States by:

a.      Selling the plaintiff and Class Members deferred annuities that were unsuitable for their estate planning, insurance and/or financial needs;

b.      Issuing age exemptions without performing a full and complete investigation regarding whether an exemption was appropriate for the annuitant;

c.      Ignoring Company protocols and practices regarding the sale of deferred annuities to senior citizens to further defendants' financial interests;

d.      Failing to fully and accurately perform underwriting duties; and

e.      Maintaining an illegal marketing scheme to sell annuity policies to senior citizens.

95.     Accordingly, defendants have violated 73 P.S. §§201-1, *et seq.* proscriptions and similar statutory enactments in the other Market States, and the plaintiff and Class Members are entitled to injunctive and equitable relief in the form of restitution and disgorgement of all earnings, profits, compensation and benefits defendants obtained as a result of such unfair and unlawful business practices.

96.     By reason of Defendants' unlawful, deceptive, willful and wanton misconduct, plaintiff and Class Members demand treble damages as allowed by law in 73 P.S. §201-1-9.2(a) and by the Consumer Protection Laws ("CPL") of each other state.  Further, by reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants and each of them, which were intentional and deliberate, plaintiff and the class demand punitive damages.

97.     As a result of the conduct described above, defendants have been and will be unjustly enriched at the expense of the plaintiff and Class Members.  Specifically, defendants have been unjustly enriched by receiving substantial monies and profits from the sale of their deferred annuity products which were promoted and sold through advertisements which affirmatively misrepresent, either directly or by implication, the true suitability of such products for purchase by senior citizen class members.  Further, both plaintiff and other Class Members have been deprived of money or property as a result of defendants' wrongful conduct and unlawful acts and practices and, therefore, have sustained injury in fact.

98.     Additionally, Defendants' uniform sales materials and standardized annuity contract forms deceived and misled the plaintiff and other members of the Class as to the suitability of the deferred annuities they purchased from defendants and thus also constitute unfair or deceptive acts or practices in violation of 73 P.S. §§201-1, *et seq.* and similar statutory enactments prohibiting unfair, deceptive and misleading advertising in other Market States.

99.     Defendants used various forms of media to advertise, call attention to, and otherwise publicize their deferred annuities by, *inter alia*, misleadingly and deceptively representing that their annuity products are suitable for purchase by senior citizens even when the annuity's maturity date is beyond the purchaser's actuarial life expectancy.  Such promotions and advertisements constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of 73 P.S. §§201-1, *et seq.* and similar statutory enactments in other Market States, which advertisements are likely to have deceived and continue to deceive the consuming public.  Defendants either knew or recklessly disregarded that such advertising was deceptive, misleading or otherwise inadequate.  Such conduct also constitutes a violation of 73 P.S. §§201-1, *et seq.* and similar statutory enactments in other Market States.

100.    The above-described unfair, unlawful, deceptive and misleading advertising and business acts conducted by defendants still continues to this day and presents a threat to Class Members and the general public in that defendants have failed to publicly acknowledge their wrongdoing or publicly issue adequate corrective notices and advertising to purchasers of defendants' annuity products and to the public generally.

101.    The advertising/marketing brochures, along with the sales techniques utilized by defendants are, in fact, false and misleading in that defendants made repeated express representations that:

a.      The American Investors and AmerUs Life deferred annuity products were a smart choice for the plaintiff's and other Class Members' financial future;

b.      The defendants' deferred annuity products offered access to money, including free withdrawals;

c.      The defendants' deferred annuity products offered special access to money for emergencies;

d.      The defendants' deferred annuity products are appropriate and suitable for senior citizens;

e.      The defendants' deferred annuity products satisfy estate and financial planning requirements; and

f.      The defendants' deferred annuity products will provide peace of mind.

102.    These representations were made by defendants with the intent to induce and did, in fact, reasonably induce plaintiff and other Class Members to purchase the defendants' annuity products and thus deprived them of monies and property as a result of defendants' acts and practices.  Had plaintiff and the Class Members known the actual facts, they would not have purchased the annuities.

103.    As a result of the conduct described above, defendants have been and will be unjustly enriched at the expense of the plaintiff and Class Members.  Specifically, defendants have been unjustly enriched by receiving substantial monies and profits from the sale of their deferred annuity products which were promoted and sold through advertisements which affirmatively misrepresent, either directly or by implication, the true suitability of such products for purchase by senior citizens.

**WHEREFORE,** plaintiff and the Class demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT THREE

### (Breach of Fiduciary Duty)

104.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

105.    By virtue of their purported positions as financial advisors, estate planning specialists, and because of their superior knowledge and ability to manipulate and control senior citizens' finances and legal status, defendants assumed fiduciary duties to plaintiff and the Class.

106.    Defendants owed to plaintiff and members of the Class the highest duties of loyalty, honesty, fidelity, trust, and due care in their fiduciary obligations, and were and are required to use their utmost ability to provide estate planning and investment advice in a fair, just and equitable manner, and to act in furtherance of the best interests of the plaintiff and the Class so as to benefit their clients, and not themselves.

107.    As set forth above, defendants each breached their obligations and fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision by, *inter alia*:

    a.    Unreasonably and in bad faith, refusing to give sufficient consideration to plaintiff's welfare rather than their own financial interests;

b.    Unreasonably and in bad faith issuing an age exception without performing a full and complete investigation of whether or not such an exception would be suitable for their customer;

c.    Ignoring company protocols and standards in order to further their own financial interests;

d.    Failing to competently supervise and monitor their employees;

e.    Failing to fully disclose the true characteristics of the deferred annuities sold to senior citizens, instead making false and fraudulent representations that defendants' deferred annuities are safe and suitable for purchase by senior citizens;

f.    Making material omissions of fact that the IMO's and brokerage firms marketing and selling defendants' deferred annuities were "independent;" and

g.    Maintaining an illegal marketing scheme and conspiracy in violation of §1961(1)(B) of RICO to sell annuity insurance to senior citizens.

108.   As described herein, defendants recklessly or knowingly breached their fiduciary duties by orchestrating, devising, carrying out, participating in, and/or failing to prevent, terminate, or timely correct the wrongdoing alleged herein.

109.   Each of these violations was achieved because defendants willingly, knowingly, and/or with recklessness sought to gain their own financial advantage to the disadvantage of the plaintiff and the Class.

110.   As a direct and proximate result of defendants' violations of their fiduciary duties, the plaintiff and the Class have been injured, and suffered and continue to suffer economic and non-economic losses, all in an amount to be determined according to proof at trial.

111.   In light of the foregoing, the plaintiff and the Class request that the Court deem this a constructive fraud, and require defendants to immediately rescind the annuity contracts to which plaintiff and the Class are subject as their fiduciary obligations so require.

**WHEREFORE,** plaintiff and the Class demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT FOUR

### (Aiding and Abetting Breach of Fiduciary Duty)

112.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

113.    Defendants aided and abetted, encouraged, and rendered substantial assistance to one another in order to accomplish the wrongful acts complained of herein.  In aiding and abetting and substantially assisting the commission of the acts complained of, defendants acted with an awareness of their wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct and scheme alleged herein.  In performing these acts, each defendant either acted as agents of the Company, or the Company ratified such acts, or both, and benefited financially from their scheme.

114.    As a result of the wrongful conduct of defendants, and each of them, plaintiff and the Class have suffered and continue to suffer economic and non-economic losses, all in an amount to be determined according to proof at trial.

**WHEREFORE,** plaintiff and the Class demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT FIVE

### (Unjust Enrichment and Imposition of Constructive Trust)

115.    Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116.    By engaging in the unsuitable deferred annuity sales scheme, the American Investors Defendants obtained payments from the plaintiff and the Class Members in the form of annuity premiums, commissions, service charges, surrender charges, and other fees, expenses and charges based upon misleading and fraudulent uniform sales presentations, marketing materials, and annuity illustrations, all as detailed more fully above.

117.    As a result of the relationships between the parties and the facts stated above, defendants will be unjustly enriched if they are permitted to retain such funds and therefore a constructive trust should be established over the monies plaintiff and the class members paid to the American Investors Defendants, including annuity premiums, commissions, service charges and other fees, expenses and charges imposed by defendants.  These monies are traceable to The American Investors Defendants firms owned, operated and/or controlled by the American Investors Defendants.

118.    The victims of the unsuitable deferred annuity sales scheme described above have no adequate remedy at law and have been damaged in an amount to be determined at the trial of this action.

119.    By reason of defendants' unlawful, deceptive, willful and wanton misconduct, plaintiff and the Class demand treble damages as allowed by law in 73 P.S. §201-9.2(a).  Further, by reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiff and the Class demand punitive damages.

**WHEREFORE,** plaintiff and the Class demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT SIX

### (Bad Faith)

120.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

121.     By issuing and underwriting said inappropriate annuity policies, the defendants acted in bad faith by violating the laws and regulations of the Commonwealth of Pennsylvania, including but not limited to, the Unfair Insurance Practices Act, 40 P.S. §§1171.1, *et seq.*, and Unfair Financial Planning Practices Act, 40 P.S. §§625-1, *et seq.*

122.     As a proximate result and direct consequence of the wrongful conduct of the defendants, plaintiff and members of the Class suffered financial and other injuries, damages and losses in an amount not yet fully ascertainable.

**WHEREFORE,** plaintiff and the Class demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## COUNT SEVEN

### (Fraudulent Misrepresentations)

123.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

124.     Defendants made uniform, material, false and misleading statements to, and/or withheld material facts from, plaintiff and members of the Class, including that long-term deferred annuities plaintiff and members of the Class purchased from defendants were suitable investments for plaintiff and members of the Class, when defendants knew or should have known that the long-term, deferred annuities were per se wholly unsuitable for plaintiff and members of the Class.  As a direct and proximate result of the wrongful conduct of defendants as

described herein, plaintiff and each of the members of the Class were damaged in an amount to be determined at trial.

125.    As a further direct and proximate result of the wrongful conduct of defendants, as described herein, plaintiff and the Class were and continue to be damaged in an amount of professional fees, including accounting and estate planning and attorney's fees and costs incurred and to be incurred by the plaintiff and members of the Class in determining and correcting the numerous estate planning errors resulting from defendants' wrongful conduct, and also in pursuing action to recover their assets.

126.    By reason of the fraudulent, reckless, malicious, willful, wanton misconduct of defendants, and each of them, which were intentional and deliberate, plaintiff and the Class demand punitive damages.

127.    By reason of the fraudulent, reckless, misleading, malicious, willful, wanton misconduct of defendants and each of them was intentional and deliberate, plaintiff and the Class demand punitive damages.

**WHEREFORE,** plaintiff and the Class demand judgment against defendants, individually, jointly and severally, in accordance with the Prayer for Relief, below.

## PRAYER

**WHEREFORE**, the plaintiff and the Class pray for judgment against defendants, and each of them, as appropriate to each cause of action alleged, as follows:

A.    An Order certifying this action as a plaintiff class action under Rule 23 of the Federal Rules of Civil Procedure as set forth herein;

B.    Compensatory damages in such amount as the Court deems just and proper;

C.      Statutory, treble and/or punitive damages as to Counts for which they are available under the applicable law in such amount as the Court deems just and proper;

D.      Imposition of a constructive trust, an Order granting recessionary and injunctive relief, and/or such other equitable relief, including restitution, disgorgement of ill-gotten profits, and an Order requiring defendants to provide corrective notice to class members as set forth herein and as the Court deems just and proper;

E.      An appropriate claims resolution facility to administer the relief in this case;

F.      Attorney fees;

G.      Costs of litigation;

H.      Prejudgment interest; and

I.      Such other relief as this Court deems equitable and just.

## **JURY DEMAND**

Plaintiff and the Class hereby demand an expedited trial by jury due to their age.


DATED:  November 8, 2005                    Respectfully submitted,

                                            **BARRACK, RODOS & BACINE**


                                            By:_____s/ DEB145_____
                                                Leonard Barrack
                                                Daniel E. Bacine
                                                William J. Ban
                                                3300 Two Commerce Square
                                                2001 Market Street
                                                Philadelphia, PA 19103
                                                Telephone:  (215) 963-0600
                                                Facsimile:   (215) 963-0838

Stephen R. Basser
John L. Haeussler
BARRACK, RODOS & BACINE
402 West Broadway, Suite 850
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:  (619) 230-1874

Howard D. Finkelstein
Mark L. Knutson
FINKELSTEIN & KRINSK
501 West Broadway, Suite 1250
San Diego, CA  92101
Telephone:  (619) 238-1333
Facsimile:  (619) 238-5425

Andrew S. Friedman
Elaine A. Ryan
Patricia N. Syverson
BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT P.C.
2901 North Central Avenue, Suite 1000
Phoenix, AZ  85012-3311
Telephone:  (602) 274-1100
Facsimile:  (602) 274-1199

William M. Shernoff
Evangeline F. Garris
Michael L. Cohen
SHERNOFF BIDART DARRAS
600 South Indian Hill Boulevard
Claremont, CA  91711
Telephone:  (909) 621-4935
Facsimile:  (909) 625-6915

Bernice J. Koplin
SCHACHTEL, GERSTLEY, LEVINE
    & KOPLIN
123 South Broad Street, Suite 2170
Philadelphia, PA  19109-1029
Telephone:  (215) 772-1700
Facsimile:  (215) 772-0312

Debra G. Speyer
LAW OFFICES OF DEBRA G. SPEYER
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
Telephone:  (610) 949-9555
Facsimile:  (610) 949-9554

**Attorneys for Plaintiff and the Class**